UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALICIA M. PAGE, individually, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>ALLIANT CREDIT UNION, and DOES 1-100,<br><br>      Defendants. | Civ. No. 2:18-cv-11481 (SDW)(CLW)<br><br>**REPORT & RECOMMENDATION** |

**WALDOR, Magistrate Judge,**

  This matter comes before the Court by way of referral from the Honorable Susan D. Wigenton to issue a report and recommendation regarding Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 16) ("Motion"). The Court declined to hear oral argument pursuant to Rule 78 and as set forth more fully below, the Court recommends the Motion to Dismiss be **GRANTED** and the case be transferred to the Northern District of Illinois.

**I. BACKGROUND**

  This is a putative class action first filed by Plaintiff Alicia Page ("Page") on July 10, 2018, challenging the practice of Defendant Alliant Credit Union ("ACU") and DOES 1 through 100 ("Defendant") to charge overdraft fees when member accounts have sufficient funds to cover transactions. (*see generally* Compl., ECF No. 1; First Amended Compl., ECF No. 9). Page brought claims for breach of contract (Counts I and II), breach of implied covenant of good faith and fair dealing (Count III), unjust enrichment (Count IV), money had and received (Count V), violation of Regulation E, 12 C.F.R. § 1005.17, of the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C.

§§ 1693 *et seq.* (Count VI), and violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:81 (Count VII). (*Id.*)

On November 6, 2018, Defendant filed a motion to dismiss for lack of Article III jurisdiction under Fed. R. Civ. P. 12(b)(1) and on separate grounds under Fed. R. Civ. P. 12(b)(6). (Motion to Dismiss Complaint, ECF No. 6). On November 19, 2019, Page amended her original complaint, adding two new named plaintiffs as class representatives, Carmel Cooper ("Cooper") and Cindy Muniz ("Muniz"). (First Amended Complaint, ¶ 5). On December 20, 2018, Defendant moved again to dismiss for lack of Article III jurisdiction pursuant to 12(b)(1) and lack of personal jurisdiction under 12(b)(2). (Motion, ECF No. 16). This is the motion currently before the Court. Plaintiffs opposed the motion on February 1, 2019. (Opposition, ECF No. 24). Defendant filed a reply on February 21, 2019. (Reply, ECF No. 26).

The following facts are taken from Plaintiffs' First Amended Complaint and assumed to be true for purposes of this motion. Page is a resident of New Jersey who alleges that she suffered improper non-sufficient funds imposed on her by Defendant. (*Id.* ¶ 5). Cooper is a resident of California and alleges that she suffered improper overdraft fees imposed on her by Defendant. (*Id.*). Muniz is a resident of Arizona and alleges that she suffered improper overdraft fees imposed on her by Defendant. (*Id.*). Defendant is an Illinois state-charted credit union with branch offices located across the country, including in New Jersey. (*Id.* ¶ 6).

This case is similar to dozens of putative class actions filed in both federal and state courts across the country challenging the banking practice of using a customer's "available" balance rather than the customer's actual or "ledger" balance to prompt an overdraft or non-sufficient funds fee. The "ledger" balance or "actual" balance refers to the full amount of all deposits in an account. Whereas, the "available" balance of an account is calculated by deducting pending debits and

deposit holds. Consequently, the "available" balance can be lower than the "ledger" balance in an account. These class actions challenge the banks' practice of charging fees based on the "available" balance even when there is enough money in the account under the "ledger" balance to cover the transaction presented for payment. Plaintiffs here argue that this practice, which they allege Defendant participates in, is inconsistent with how Defendant describes the circumstances under which overdraft fees are assessed in the Account Contract and Opt-In Contract, the latter of which describes Defendant's overdraft policies as required by Regulation E of EFTA. (Am. Compl. ¶ 33).

Plaintiff Page, in her Original Complaint, alleged that this Court had subject matter jurisdiction under 28 U.S.C. § 1331 based on the one claim of a violation of Regulation E, a federal law. (Compl. ¶ 13, 88-94). After Page amended her complaint to include Cooper and Muniz, Plaintiffs alleged subject matter jurisdiction under 28 U.S.C. § 1331 and § 1332. (Am. Compl. ¶ 15).

Defendant now moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) contending that the Court did not have subject matter jurisdiction at the time Plaintiff Page's original complaint was filed, and therefore, has no subject matter jurisdiction now even with a new complaint. Defendant also challenges the Court's alleged personal jurisdiction under Rule 12(b)(2) over Defendant, whose principal place of business and place of incorporation is Illinois.

## II. LEGAL STANDARD

United States District Courts are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 125 S. Ct. 2611, 162 L.Ed.2d 502 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L.Ed.2d 391 (1994). "[Federal courts] possess only that power authorized by Constitution and statute, which is not to

be expanded by judicial decree." *United States v. Merlino*, 785 F.3d 79, 82 (3d Cir. 2015) (quoting *Kokkonen*, 51 U.S. at 377)). Consequently, when a federal court finds that it lacks jurisdiction over an action, "the only function remaining . . . is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L.Ed.2d 210 (1998); *see Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012); Fed. R. Civ. P. 12(h)(3).

A motion to dismiss for lack of subject matter jurisdiction may be raised by a defendant at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999); *see* 2 Moore's Federal Practice § 12.30[1] (Matthew Bender 3d ed. 2015). "The burden of establishing federal jurisdiction rests with the party asserting its existence." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3, 126 S. Ct. 1854, 164 L.Ed.2d 589 (2006)).

Challenges to subject matter jurisdiction pursuant to Rule 12(b)(1) may be regarded as either facial or factual. *See Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977); 2 Moore's Federal Practice § 12.30[4] (Matthew Bender 3d ed.). Facial challenges "contest the sufficiency of the pleadings" as a basis for the court's subject matter jurisdiction. *S.D. v. Haddon Heights Bd. of Educ.*, 833 F.3d 389 n.5 (3d Cir. 2016) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)). A court reviewing such a challenge may "only consider the allegations of the complaint[,]" which it takes to be true, "and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)) (internal quotation marks omitted); *see Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006).

In contrast, a factual challenge contests the truth of the allegations underlying a plaintiff's assertion of subject-matter jurisdiction. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d

4

Cir. 2014); *Mortensen*, 549 F.2d at 891. When a defendant raises a factual challenge, "no presumptive truthfulness attaches to [the] plaintiff's allegations[,]" *Mortensen*, 549 F.2d at 891, and "a court may weigh and 'consider evidence outside the pleadings[.]'" *Constitution Party of Pa.*, 757 F.3d at 358 (quoting *Gould Elecs. Inc.*, 220 F.3d at 176). The plaintiff bears the burden of proving that jurisdiction in fact exists, *Mortensen*, 549 F.2d at 891, and he or she must meet this burden by supplying "competent proof" thereof. *Hertz Corp. v. Friend*, 559 U.S. 77, 96, 130 S. Ct. 1181, 175 L.Ed.2d 1029 (2010) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L.Ed. 1135 (1936)).

Here, Defendant raises a factual 12(b)(1) challenge, asserting that the Original Complaint failed to allege federal question jurisdiction because Plaintiff Page lacked standing to bring a claim under Regulation E. Plaintiffs argue that even if the Court found that no federal question jurisdiction existed at the time of Page's original filing, diversity jurisdiction under CAFA was always present. (Opp. at 13-15). In response, Defendant also raises a facial attack, arguing that neither of Plaintiffs' complaints plead any amount in controversy, and therefore Plaintiffs fail to meet the requisite standards for diversity jurisdiction. (Reply at 4-5).

## III. <u>DISCUSSION</u>

### A. Federal Question Jurisdiction

Plaintiffs allege Defendant violated the opt-in rule under Regulation E of the EFTA, 12 C.F.R. § 1005.1 *et seq.*, because it did not accurately describe its overdrafting practices in the Opt-In Agreement. The Regulation E opt-in rule provides, in relevant part:

> [A] financial institution . . . shall not assess a fee or charge on a consumer's account for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service, unless the institution:

> (i) Provides the consumer with a notice in writing, or if the consumer agrees, electronically, segregated from all other information, describing the institution's overdraft service;
>
> (ii) Provides a reasonable opportunity for the consumer to affirmatively consent, or opt in, to the service for ATM and one-time debit card transactions;
>
> (iii) Obtains the consumer's affirmative consent, or opt-in, to the institution's payment of ATM or one-time debit card transactions; and
>
> (iv) Provides the consumers with confirmation of the consumer's consent in writing, or if the consumer agrees electronically, which includes a statement informing the consumer of the right to revoke such consent.

12 C.F.R. § 1005.17(b). Further, the mandated disclosure must "be clear and readily understandable." 12 C.F.R. § 1005.4(a)(1).

Defendant argues that Page never actually alleged incurring an overdraft fee for an ATM or non-recurring debit card transaction in her Original Complaint. (Motion at 6). Instead, Defendant points out that Page's Original Complaint only alleges the incurring of a NSF fee for attempting to pay a $6,000 bill, which is different than an overdraft fee from an ATM or debit card transaction. (*Id.* at 6-7). In support of these contentions, Defendant attached a declaration from an ACU employee, Joseph Arellano, Manager of Member Payment Operations. (Arellano Declaration, ¶ 1, ECF No. 16-3). Arellano testified in his declaration that Page never incurred an overdraft fee based on an ATM or non-recurring debit card transaction. (*Id.* ¶ 4). According to Arellano, all of the overdraft fees incurred were from withdrawals or other customer authorizations to debit directly from her checking or savings account for the purpose of payment. (*Id.*) Because Plaintiff Page never originally had standing, Defendant argues that Plaintiff cannot cure the lack of standing by amending her complaint to include individuals who allegedly did incur Regulation E overdrafts.

Plaintiffs in their Opposition to this Motion do not contest Defendant's assertion that Page's fees were not a result of an ATM or non-recurring debit card transaction. Instead, Plaintiffs' response is twofold. First, Plaintiffs argue that Defendant's basis for charging Page for any type of overdraft fee stems from their Opt-In Contract and because Plaintiffs are alleging that the Opt-In Contract violates a federal regulation, each of the state causes of action then asserts the violation of a federal right as an element. (Opp. at 32.) Plaintiffs further explain that it is the Opt-In Contract that "serves as the mechanism for ACU to opt in members into the overdraft program for nonrecurring debit card and ATM transactions." (*Id.* at 34). Therefore, Plaintiffs argue, the Opt-In Contract is "inextricably entwined" with a federal law, Regulation E., and the EFTA. (*Id.*).

A district court only has original jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "any Act of Congress relating to patents, plant variety protection, copyrights and trademarks," 28 U.S.C. § 1338(a). A case "aris[es] under federal law when "federal law creates the cause of action asserted." *Gunn v. Minton*, 133 S. Ct. 1059, 1064, 185 L.Ed. 2d 72 (2013); *see* 28 U.S.C. §§ 1331, 1338(a), 1441, 1454. A case may also "aris[e] under" federal law when a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balances of federal and state judicial responsibilities." *Gunn*, 133 S. Ct. at 1065 (quoting *Grable & Sons Metal Prods v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). Under this test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* All four factors must support federal jurisdiction, and jurisdiction pursuant to this test is rare. *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) ("*Grable* presented

on of the rare instances where a federal issue was necessarily raised."). Under either theory, the Court is governed by the well-pleaded complaint rule, which provides that "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaints." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

For a federal issue to be necessarily raised, "vindication of a right under state law [must] necessarily turn[] on some construction of federal law." *Manning*, 772 F.3d at 163 (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983). Unlike in *Grable* where the meaning of notice under the federal statute was an essential element in the plaintiff's quiet title claim, whether the Opt-In Contract violated Regulation E is not an element of any of Plaintiffs' state law claims. In other words, Plaintiffs' state law claims could be decided without reference to federal law. Indeed, it is Defendant's contractual "promise" that it would "assess overdraft fees only when there was not enough money in the account to cover the transaction" that is at the very heart of Plaintiffs' state law claims, not whether that promise violated a federal regulation. (Compl. ¶ 61; Am. Compl. ¶ 65). Because the Court finds that the federal issue is not necessarily raised by Plaintiffs' state law claims, the Court need not evaluate the other factors.

Plaintiffs second response more directly addresses the question of standing. They argue that Regulation E "goes beyond the context of ATM and one-time debit card transactions" because the statute under which Regulation E is contained "applies to *any electronic fund transfer* that authorizes a financial institution to debit or credit a consumer's account." (Opp. at 35) (quoting 12 C.F.R. § 1005.3(a)). The Court finds this unpersuasive. Not only do Plaintiffs in both complaints specifically allege that Defendant's practice specifically violates the "Opt-In Rule" of Regulation E, but the Opt-In Rule states that it applies to "ATM and one-time debit card transactions." (Compl.

8

¶ 90; Am. Compl. ¶ 94; 12 C.F.R. ¶ 1005.17.) Plaintiffs have not produced any evidence or authority to convince the Court to find that it should read into the rule a broader application then what is explicitly stated.

Because Plaintiffs have produced no evidence that these are the fees for which Page incurred nor do they dispute Defendant's evidence that none of Page's fees resulted from ATM and one-time debit transactions, the Court finds that Plaintiffs failed to articulate sufficient facts to show that the injury that Page incurred was a result of Defendant's alleged Opt-In Rule violation, and thus lacked standing to bring Count VI, her only federal claim, in her Original Complaint.

### B. Diversity Jurisdiction

Plaintiffs assert diversity jurisdiction under the Class Action Fairness Act ("CAFA") as an alternative to federal question jurisdiction. CAFA confers on district courts "original jurisdiction of any civil action" in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) a class consisting of at least 100 or more members ("numerosity requirement"). 28 U.S.C. §1332(d)(2), (5)(B), (6); *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013). Those class members include "persons (named or unnamed) who fall within the definition of the proposed [] class." § 1332(d)(1)(D). CAFA is "intended to expand substantially federal court jurisdiction over class actions" and "[i]ts provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court." S. Rep. No. 109-14, at 43 (2005), 2005 U.S.C.C.A.N. 3, 41); *Knowles* at 1350.

Defendants do not dispute that Page had met the minimal diversity and numerosity requirements in her Original Complaint. Instead, Defendants facially challenge the Court's jurisdiction under a diversity theory because they argue that Plaintiffs have not pled an amount in

controversy that exceeds the jurisdictional limit on the face of either complaint. (Reply at 4-5). Plaintiffs argue that there can be "no doubt" that the amount in controversy exceeds five million dollars and include a declaration to testify to the estimated damages. (Opp. at 15; Kick Decl. (ECF No. 34-1)). However, Defendant is correct that both complaints are silent on the amount of damages that Plaintiffs seek. Because plaintiffs must affirmatively plead the amount in controversy on the face of the complaint, Plaintiffs here have improperly alleged subject matter jurisdiction under CAFA. *Crisafulli v. Ameritas Life Ins. Co.*, 2014 WL 2611839, *4 (D.N.J. June 11, 2014) (citing *Gray v. Occidental Life Ins. Co. of Cal.*, 387 F.2d 935, 937 (3d Cir. 1968)); *see also S. Freedman and Co., Inc. v. Raab*, 180 Fed Appx. 316 (3d Cir. 2006) ("It is well established that the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference.")

1. Request to Amend

Plaintiffs maintain that diversity jurisdiction always existed and request that they be allowed leave to file a second amended complaint to address any jurisdictional shortcomings. (Opp. at 16-18). 28 U.S.C. § 1653 allows "defective allegations of jurisdiction [to] be amended, upon terms, in the trial or appellate courts." Federal courts have interpreted this language to allow amendments to cure defects in the pleadings, for example where a party fails to properly allege facts supporting jurisdiction that actually exists. *Scattergood v. Perelman*, 945 F.2d 618 (3d Cir. 1991) (quoting *Kiser v. General Electric Corp.*, 831 F.2d 423, 427 (3d Cir. 1987)). "This statute applies in particular to amendments that affect a court's diversity jurisdiction, and it permits amendments broadly so as to avoid dismissal of diversity suits on technical grounds." *See Kiser*, 831 F.2d at 427 (citing *Moore v. Coats Co.*, 270 F.2d 410, 412 (3d Cir. 1959)). Indeed, "every Court of Appeals that has considered the scope of § 1653 has held that it allows appellate courts

to remedy inadequate jurisdictional allegations." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831-32 (1989). Therefore, a plaintiff who has either omitted or incorrectly stated allegations supporting their assertion of subject matter jurisdiction may be permitted to amend the complaint in order to demonstrate that such jurisdiction exists.

Courts in this district have allowed plaintiffs to amend their complaint even when it found that the plaintiffs did not properly allege subject matter jurisdiction. *See Kiser*, 831 F.2d at 427 (reversing the district court's dismissal for lack of subject matter jurisdiction when plaintiff requested for leave to amend complaint to cure the defect); *Merchants Mutual Insurance Co. v. New Vistas Corp.*, 2018 WL 3647223, *3 (D.N.J. July 31, 2018) (granting defendant's 12(b)(1) motion to dismiss but sua sponte allowing plaintiff to file a second amended complaint under 28 U.S.C. § 1653); *Mayflower Transit, LLC v. Interra Industries, LLC*, 2008 WL 2559358, *3 (D.N.J. June 26, 2008) (denying plaintiff's motion for default judgment for lack of subject matter jurisdiction but sua sponte allowing plaintiff thirty days to amend the complaint under Fed. R. Civ. P. 15(a) to establish such jurisdiction) (citing *Victory v. Manning*, 128 F.2d 415, 417 (3d Cir. 1942). *Compare Multicultural Radio Broadcasting, Inc. v. Korean Radio Broadcasting, Inc.*, 2017 WL 436250, *5 (D.N.J. Jan. 31, 2017) (finding that plaintiff's proposed amended complaint was not authorized by § 1653 because the proposed amended complaint asserted a new federal cause of action and a new basis for subject matter jurisdiction); *Cliffs Natural Resources Inc. v. Seneca Coal Resources, LLC*, 2018 WL 2012900, *4-5 (D. Del. Apr. 30, 2018) (finding that § 1653 was inapplicable where the court was asked to consider the merits of a proposed amendment alleging a new claim as a basis for federal question jurisdiction.).

Here, Page adequately pled both the numerosity and diversity requirements under CAFA in her Original Complaint. The only jurisdictional defect in both the Original and First Amended

Complaint was the lack of amount in controversy on the face of the complaint, a threshold amount that Defendant has not argued that Plaintiff cannot meet. Because Plaintiffs need only plead the requisite amount in controversy on the face of the complaint to satisfy diversity jurisdiction and because the Court sees no reasons such as undue delay or bad faith to deny an amendment under Fed. R. Civ. P. 15(a)(2), the Court finds that § 1653 permits Plaintiff to file a second amended complaint. Therefore, the Court recommends granting the Motion for lack of subject matter jurisdiction but keeping the case open for thirty days to allow Plaintiffs to file a second amended complaint, which, in good faith, shall sufficiently plead this Court's jurisdiction. Failure to do so will result in dismissal.

**C. Personal Jurisdiction**

Defendant also moves to dismiss on the basis that that this Court lacks both general jurisdiction as well as specific jurisdiction for the claims brought by Plaintiffs Cooper and Muniz. In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Because there was no evidentiary hearing, Plaintiffs need only establish a prima facie case for personal jurisdiction. *Id.* To meet this burden, Plaintiffs must demonstrate "with reasonable particularity sufficient contacts between the defendant and forum state." *See Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

A federal court in New Jersey exercises jurisdiction to the extent permitted by New Jersey law. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). New Jersey's long-arm statute provides for the exercise of jurisdiction over non-residents "to the uttermost limits permitted by the United States Constitution." *Charles Gendler & Co., Inc. v. Telecom Equip. Corp.*, 102 N.J. 460, 469 (1986). Therefore, "we ask whether, under the Due Process Clause, the

defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation and alteration omitted).

The Court may assert either general or specific jurisdiction over a defendant. *Bristol-Myers Squibb Co. v. Super. Ct. Cal.*, 137 S. Ct. 1773, 1780 (2017). Whether a court has general jurisdiction over a defendant turns on whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Battman*, 571 U.S. 117, 139 (2014). In all but "exceptional case[s]," a corporation is subject to general jurisdiction only in its place of incorporation and its principal place of business. *Id.* at 137, 139 n. 19. Here, it is undisputed that Defendant is neither incorporated nor has its principal place of business in New Jersey. Plaintiffs submit nothing on which the Court could find this to be the "exceptional case." Therefore, this Court has no general jurisdiction over Defendant in this case.

A court has specific jurisdiction over a defendant if the following three-part test is met: (1) "the defendant must have purposefully directed [its] activities at the forum;" (2) "the litigation must arise out of or relate to at least one of those activities;" and (3) if the first two requirements are met, the exercise of jurisdiction must "otherwise comport[] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317. Neither complaint specifies a basis for the Court to find specific jurisdiction over the Defendant in the instant case. Moreover, in their Opposition to this Motion, Plaintiffs do not attempt to demonstrate that the claims brought by Cooper and Muniz relate to Defendant's contacts with New Jersey as the injuries they suffered occurred outside of this state. Instead, Plaintiffs assert the "pendent party doctrine" as the basis for jurisdiction over Defendant. (Opp. at 24).

13

Plaintiffs argue that the power of courts to "adjudicate a claim against a party who would otherwise not be subject to the jurisdiction of the federal courts if the claim arose from common nucleus of operative fact" lies within 28 U.S.C. § 1367(a). (Opp. at 24). Section 1367 is the codification of the doctrine of supplemental jurisdiction. Thus, the application of supplemental and pendent jurisdiction is misplaced in this context of personal jurisdiction and is irrelevant to a court's determination of whether personal jurisdiction exists.

Plaintiffs also rely on a number of cases where "pendent personal jurisdiction" has been applied to state or federal claims that would not otherwise be subject to the court's jurisdiction were it not for an additional federal claim for which nationwide personal jurisdiction has been established by federal statute. (Opp. at 26) (citing *Action Embroidery Corp.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004) (the Clayton Act); *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555-56 (3d Cir. 1973) (Securities Exchange Act); *United States v. Botefuhr*, 309 F.3d 1263, 1272-75 (10th Cir. 2002) (IRS claim under 31 U.S.C. § 3713); *Robinson Eng'g Co., ltd. Pension Plan Trust v. George*, 223 F.3d 445, 449-50 (7th Cir. 2000) (Securities Exchange Act); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 628-29 (4th Cir. 1997) (RICO); *IUE AFL-CIO Pension Fund v. Hermann*, 9 F.3d 1049, 1056-57 (2d Cir. 1993) (Multiemployer Pension Plan Amendments Act); *Oetiker v. Werke*, 556 F.2d 1, 5 (D.C. Cir. 1997) (patent infringement).[1]

However, unlike the statutes in these cases, Regulation E does not confer nationwide personal jurisdiction. Moreover, courts have interpreted these cases to allow for personal jurisdiction over additional claims, not necessarily over additional parties, which is what Plaintiffs are asking the Court to do here. *See Action Embroidery*, 368 F.3d at 1180-81 ("Pendent personal

---

[1] Plaintiffs also cite to *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 784 (3d Cir. 1995). The Third Circuit's discussion of "pendent-party jurisdiction" is limited to the context of § 1367 and subject matter jurisdiction. The Court notes that the Third Circuit did not extend this doctrine to personal jurisdiction in this case.

14

jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction.); *Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F. Supp. 3d 173, 194-95 (D. Mass. 2016) ("The doctrine of pendent personal jurisdiction allows a court to exercise personal jurisdiction over additional claims against a single defendant, not over additional defendants. . . . The doctrine is inapplicable here because [plaintiff] cites no case law that supports 'pendent personal jurisdiction' over additional defendant, as opposed to additional claims."); *In re: Bard IVC*, 2016 WL 6393596, *4 n.4 (D. Ariz. Oct. 28, 2016) ("Some cases have recognized a form of pendent personal jurisdiction . . . 'where a federal statute authorized nationwide service of process, and the federal and state claims drive from a common nucleus of operative fact,' . . . . Even if this doctrine is viable, it applies to claims asserted by a single plaintiff, not claims asserted by different plaintiffs.").

Most relevant to the question at hand are the cases Plaintiffs cite that ask whether in a class action a court that has specific personal jurisdiction over the defendant as to a particular claim by one plaintiff can exercise personal jurisdiction as to similar claims brought by different plaintiffs. (Opp. at 26-27) (citing *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018); *Allen v. ConAgra Foods, Inc.*, 2018 WL 6460451 (N.D. Cal. Dec. 10, 2018)). In both cases, judges in the Northern District of California decided to extend the "pendent-party jurisdiction" doctrine of *Action Embroidery* to class actions in the wake of *Bristol-Myers Squibb v. Superior Court of California, San Francisco Cty.*, 137 S.Ct. 1773, 1781-82 (2017), in which the Supreme Court concluded that a California state court lacked personal jurisdiction over the defendant when it came to claims by nonresidents in a mass action tort suit. However, the Third Circuit has not recognized a pendent party doctrine beyond the limited circumstances of the nationwide service of process

15

and pendent claim personal jurisdiction context of *Robinson* (484 F.2d at 555-56) and the court declines to do so at this time given the existence of an alternative forum to which Plaintiffs have agreed to transfer and that would resolve the personal jurisdiction question.

## D. Transfer

Plaintiffs ask in their opposing brief that the court transfer this action under 28 U.S.C. §1404(a) and 28 U.S.C. § 1631 to Illinois where Defendant would be subject to the jurisdiction of the United States District Court if it rules that this Court cannot exercise personal jurisdiction. 28 U.S.C. § 1404(a) allows for a district court, "for the convenience of parties and witnesses [and] in the interest of justice . . . [to] transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented." 28 U.S.C. § 1631 provides that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have bene brought at the time it was filed or notice."

A court may, sua sponte, transfer a case under § 1404(a) and § 1631 when it lacks personal jurisdiction. *See Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218, n.9 (3d Cir. 2002) (noting that under § 1631, the court may sua sponte transfer for lack of in personam jurisdiction); *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107 (3d Cir. 2009) (acknowledging that § 1631 permits transfer for lack of in personam jurisdiction); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 284 (3d Cir. 1994) (noting that if plaintiff cannot show minimum contacts, the district court may consider transfer pursuant to 28 U.S.C. § 1406 or § 1631); *Jenkins v. Lowe's Home Ctr., Inc.*, No. CIV.A. 10-0366 (RBK), 2010 WL 2985983, at *3 (D.N.J. July 26, 2010) (recognizing that § 1631 permits transfer for lack of personal jurisdiction); *Imundo v.*

16

*Pocono Palace, Inc.*, 2002 WL 31006143, *3 (D.N.J., Aug. 14, 2002) (recognizing power under both § 1404(a) and § 1631 to transfer for lack of personal jurisdiction instead of dismiss); *Chicosky v. Presbyterian Med. Ctr.*, 979 F. Supp. 316, 321 n. 5 (D.N.J. 1997) ("the weight of authority among courts in [the Third] Circuit is that § 1631 [allows] transfers where personal jurisdiction is lacking" and noting that an action "may also be transferred under section 1404 to cure a defect in personal jurisdiction).

The Court finds that a transfer of this case to the Northern District of Illinois pursuant to § 1404(a) and § 1631 will promote the "just, speedy, and inexpensive determination of [these] proceeding[s]. Fed. R. Civ. P. 1. First, in personam jurisdiction is proper in Illinois because that is where Defendant is incorporated and has its principal place of business and thus could have been brought there at the time it was filed. Second, Plaintiffs are willing to proceed in Illinois instead of New Jersey. Third, the circumstances weigh heavily in favor of transfer to the Northern District of Illinois: (a) where the vast majority of witnesses and documents are located and (2) where transfer would avoid redundant litigation and promote judicial economy. Because Defendant is not subject to personal jurisdiction in New Jersey with respect to Cooper and Muniz's claims, if this action were to proceed in this District, Cooper and Muniz's claims would need to be dismissed and refiled in another state. This would require the same issues to be litigated against the same defendant in more than one place. Finally, an alternative proper venue exists, the Northern District of Illinois, where all of the claims of Plaintiffs can be litigated against Defendant and one where Defendant would be subject to jurisdiction. Therefore, the Court finds that the interests of justice and judicial economy compel recommending that the transfer of the entire action to the Northern District of Illinois, where personal jurisdiction may exist over Defendant.

## IV. **CONCLUSION**

For the foregoing reasons, the Court recommends that (1) the Motion to Dismiss be **GRANTED**, (2) the case be kept open for thirty days following the adoption of this Report and Recommendation to allow Plaintiffs to file a second amended complaint to address the CAFA jurisdictional defects with the failure to do so resulting in a dismissal of this case**,** and (3) the case be transferred to the Northern District of Illinois.

Pursuant to Local Rule 72.1(c)(2), parties have 14 days from the date this report is filed with the Clerk of the Court to file and serve objections to this Report and Recommendation.

**SO ORDERED**

**Dated:** June 14, 2019

s/ Cathy L. Waldor
**CATHY L. WALDOR**
**UNITED STATES MAGISTRATE JUDGE**
